Good morning, your honors, and may it please the court, Sergio Sarkany for the respondent. At issue in this case is the proper interpretation of the Secretary of Homeland Security's discretionary authority under 8 U.S.C. 1226A to detain an alien pending a decision on whether that alien is to be removed from the United States. In ordering petitioner's release before a final removal decision had been made, the district court misapplied and seemingly ignored Supreme Court precedent to import a reasonableness requirement into 1226A that does not exist, nor is it reflected in the statutory text. The district court's adoption of the reasoning contained in Zadvydas v. Davis to imply an extra textual limit on the 1226A is wholly inappropriate. The Zadvydas court resorted to the canon of constitutional avoidance to imply a limit on post-order detention to 1231A6. Again that's post-order, we're talking pre-order. But it did so because it found ambiguity in that statutory phrase in Congress's authorization to allow the government to, quote, may continue to detain certain aliens after the initial 90-day removal period. Well, Counselor, 1226 has made two or three times without me looking very hard. Yes, it does, Your Honor. Why doesn't it apply? Well, Supreme Court case apply. Right, Your Honor. Well, the first and most obvious distinction is that the Supreme Court relied not only on the ambiguity of the phrase may continue to detain, but in the complete absence of any other limit on the government's detention authority under 1231A6. Is there any limit here? I don't see any limit. Just looking at 1226, there's no periodic review, right? There's, help me. For 1226? Yeah, for 1226. Yes, Your Honor. Well, as reflected in the Supreme Court's dissenting decision in Jennings v. Rodriguez, 1226 detention does have a definite endpoint, and that is the issuance of a final order of removal. Right. And there's no time limit on that? No, Your Honor, there's not a time limit. But the distinction to be made by this court is in Zadvydas, we had the threat of indefinite detention. And again, it was rooted in the ambiguity of the phrase may continue to detain without any explicit endpoint. And a fact-specific application to that particular alien in that the government had attempted to remove Mr. Zadvydas to three different countries, Germany, his home country, Lithuania, and I believe the Dominican Republic. But none of those factors are present here for Mr. Ali. In addition, the canon of constitutional avoidance only applies when the statute at issue is susceptible to multiple interpretations. And Congress can, or the courts can avoid that interpretation that raises a serious constitutional concern and adopt an alternative plausible interpretation. So you're saying that the terminating point in 1226A, which is at the end of the decision, the period pending a decision, that's sufficient to satisfy due process concerns? Yes, Your Honor. And in addition to the review that's allowed under the bond proceedings. But again, this district court applies and adopts the reasoning of Zadvydas, which we argue is wholly inapplicable here, especially when read in light of the Supreme Court's recent decision in Jenning v. Rodriguez, which struck down the Ninth Circuit for exactly this type of statutory reinvention. In this case, reading a reasonableness requirement that does not exist in the text of 1226A. Without arguable statutory foundation. So the plain language of 1231A6 at issue in Zadvydas and 1226A here renders application of the canon of constitutional avoidance erroneous. But even if that did apply, as we know, the canon is permissible only when the court can give a plausible interpretation of the statutory language. And again, the reading here is not plausible. There's nothing in 1226A that even remotely suggests that some arbitrary reasonable time limit is the real endpoint to the government's authority. Again, the statute expressly has an endpoint and it is not what the district court seemingly imported. The district court likewise erred to the extent it concluded that the mere length of petitioner's detention violated its due process right. The court here failed to account for the government's legitimate continuing interest in detaining petitioner under 1226A. The purpose of pre-order detention is to ensure against flight, ahead of the removal decision, and protection of the community against danger. Petitioner's detention continues to bear a reasonable relation to the purposes for which he was detained. Counsel, there's 1226 with the A right against the six in no parentheses. The next section. You know what I'm referring to? 1226A without parens? Yeah, right. Yes, Your Honor. Yeah, good. We'll call it that. Why shouldn't the government have to do 1226A if you really have the items that you try to bring in now on appeal in the affidavit? There's no language in 1226, no parens A, that mandates that the government on suspicion or evidence of terrorist activity detain the alien under that subsection. And there is certainly nothing in the- Well now, counsel, let me correct you. Section six talks about limit on indefinite detention and it gives a hearing every six months. I'm looking at it. In 1226, no parens A. Number six, limit on indefinite detention. Yes, Your Honor. Okay. But there's nothing that mandates or that prevents the government, based on the facts and circumstances of any particular detention, from detaining an alien under the secretary's discretionary authority under 1226 parens A. There's simply no mandate from Congress that- And if they're less of a danger, they don't get a hearing, right? That's what you're saying. Well, the discretionary authority, they do get a hearing, Your Honor. They do get an initial hearing at ICE to determine whether they should be released on bond. Yeah, but I'm talking about the- Go ahead. Yes, Your Honor. Go ahead. You're going to get the- They don't get the periodic one. It's not automatic, Your Honor, under 1226 parens A. They get an initial bond determination and then as of right, they may petition the immigration judge for a redetermination and they are entitled to another bond hearing anytime they can demonstrate material changes in their circumstances. Counsel, let's suppose that a reasonableness standard was to be implied into 1226 A. What impact would the same government interest that you mentioned, prevention of flight and community and national security, what impact or relevance would those factors have in determining what is an unreasonable time? In other words, if we had a reasonableness standard, what impact would those factors have on that determination? Well, as to the length of time, Your Honor, that's a little difficult to say because that involves an analysis of the proceedings, the underlying proceedings, which I'm happy to go But our basic point as far as given that reasonableness is the touchstone of due process, the detention remains reasonable when it is, one, pending a removal decision, and two, in the interest of preventing flight or protection against the community. Those are the recognized purposes for pre-ordered detention under 1226 A and we have evidence here as a result of the bond hearings that Mr. Ali has failed to prove that he is not a danger to the community, therefore expressly satisfying the terms of 1226 A. As for the time, Your Honor, you have to take a look at what happened in the underlying proceedings and we believe that the district court erred significantly in ordering Mr. Ali's release without considering his litigation strategy and without considering the government's conduct in pursuing the litigation. We have here, for example, a expressed finding by the immigration judge that Mr. Ali had knowingly pursued a frivolous claim, which upon review of the decision occupied the majority of the litigation after the immigration judge indicated that he was willing to find or was inclined to find Mr. Ali removable. And in addition, Your Honor, the government has prosecuted this case. We would suggest that in the absence of dilatory conduct or obstructive tactics by the government, the time that it takes to get to a certain point in proceedings is simply the time it takes to get to that point in any given proceedings. Because this, even if it on its face seems to be a prolonged detention, we can also say with confidence that when Congress authorized detention under 1226A, it surely contemplated the standards, the standard procedures that come with litigation. And aliens have a substantial influence in that particular area. They are entitled, and this is not at issue, but they are entitled to call witnesses, present evidence, cross-examine, seek counsel at their own discretion, and seek discretionary relief. In Damora or Damore, I don't know which it is, but in that Supreme Court case, the Supreme Court says an appeal typically adds five months to detention. You know the Supreme Court says that in that case? Yes. In the majority opinion, they do. So he appealed the removal order on January 17, right, of this year? Correct. Before the Board of Immigration Appeals. Correct. To the BIA that day. Correct. So do you think that that should be the reasonable period? Not in this case, Your Honor, no. Damore, the Supreme Court upheld relatively brief detention under 1226C in Damore. But in instances where the detention under 1226C becomes, quote, unreasonable, courts apply a fact-specific balancing test. And the remedy, should they find that the detention has exceeded reasonable expectations, is to order a bond hearing. And 1226A has those hearings built into the statute. One quick point to be sure I'm following you. Even though 1226E says no judicial review, the government acknowledges habeas is available, right? Correct. Okay, thank you. Well, Your Honors, unless there's any other questions in conclusion, or I'd rather reserve the remainder of my time for rebuttal. Very well. Thank you. If it may please the Court, my name is Ian Bratley on behalf of Appellee Firas Ali. Mr. Ali has been in prison now for nearly two years. Unlike many citizens in removal proceedings, Mr. Ali is not subject to mandatory detention. He has not arrived an alien. He has not been convicted of any criminal acts, and he's not been designated a terrorist. He's being held solely under a discretionary act by the government. Counselor, did I hear you correct to say that he was a citizen? I'm sorry? Did you say he was a citizen? No. Unlike many citizens. Oh, I'm sorry. Unlike many non-citizens. I'm not sure if I said that correctly. I apologize, Your Honor. Mr. Ali's immigration case is complex and has been delayed by many factors, including the death of his lawyer. His immigration detention has now run far longer than the brief detention permitted and anticipated for criminal aliens in Damore v. Kim. So what analysis did the District Court do to suggest that, I guess, what at that time was his decision was supported? He looked at it both under the statutory and the constitutional ground. Under the statutory ground, Judge Doty relied upon the reasonable standard that must be read into 1226A. I understand that, but what analysis did he do that proves to us that 18 months is unreasonable? So, in his opinion, the judge noted that the length of his detention is far longer than the length anticipated in typical cases. He cited to both Hamana out of the Michigan court and the Guerrero-Sanchez decision out of the Third Circuit that also held that there are limits based on the detention, the length of detention, while also considering other relevant factors that we briefed and cited in our filings to the court. Counsel, would that be an objective standard or would it be based on the amount of time it actually takes in the real world to complete one of these proceedings? I think it would be a fact-specific standard to each individual case, that detention in some cases may be longer than in other cases. There is not a bright-line rule that says detention at six months or eight months is inappropriate. There is a bright-line standard. Judge Doty found that, however, wherever that standard is, 18 months is well beyond that standard. He also noted that the government had not submitted their interests. There was no allegations of flight risk by Mr. Ali until filed to this court, and the government failed to present any evidence of dangerousness to the court. So Judge Doty didn't have much to weigh against. He had the argument presented by Mr. Ali, and then the government chose to submit only a declaration by one officer from HSI, Timothy Gregg's declaration. Importantly, they also noted that Timothy Gregg's declaration was not presented for evidentiary purposes, but just to inform the district court of the immigration court's proceedings below. So they had an opportunity, but chose not to present evidence of dangerousness or flight risk to the lower court. Judge Doty also noted that, or I would also note, that the Jennings court has reinforced the reasonable standard that was relied upon in Zedvitas. Detention under 1231A6 uses the same language that detention under 1226 uses. The district court in Michigan, specifically dealing with Iraqi habeas petitioners, made a similar finding as to Judge Doty. And the Third Circuit in Guerrero Sanchez held that there is no substantial distinction between the liberty interest of aliens detained under 1226A and 1231A6 because regardless of the stage of the proceedings, the same important interest is at stake, freedom from prolonged detention. Counsel, what about the textual difference between 1226A and the other statute that your opposing counsel brought up? Because there is a terminating period, at least in theory, in 1226A. Certainly, and I think that gets to the point that the Guerrero Sanchez court and the Hamana court were making both post-Jennings decisions. While there is a limit, there will be an end date under 1226A. That is not the only analysis. There can still be prolonged detention, which is a violation of the alien's rights. And both 1226A and 1231A6 suffer from the same ambiguous language that detention may continue for a constitutionally prohibited period of time that requires the lower courts, as the Third Circuit has said, to review statutes similarly and only permit detention when it is reasonable, under a reasonableness period standard, based on the case law in Damore. Judge Doty was correct to find that reasonable standard. Additionally, Judge Doty found that the Constitution's due process requirements protected Mr. Ali as well in his decision. The Supreme Court has required that civil detention be narrowly tailored and that there should be strong individualized procedures to protect against prolonged detention. The due process clause protects Mr. Ali's freedoms. He has a strong liberty interest in denying his right to an individual who's detained under discretionary grounds would be a significant departure from Supreme Court and other circuit court opinions protecting liberty interest rights in the immigration detention context. Yes. Do you think that the Jennings decision might indicate that the Supreme Court would be satisfied here with the initial bond procedure? No, Your Honor. That would be sufficient? No. The Jennings court, as a starting point, the Jennings court does not talk about the due process protections at all. It specifically kicked that issue back to the Ninth Circuit. So the issue does not decide on due process. But with that said, the constitutional rights of Mr. Ali are not dependent on the procedural protections that the executive branch has given him. Rather, whether his imprisonment is lawful under the due process, and that must be reviewed at all stages of his confinement. At a certain point, due process is going to require his release. Judge at the 18 month mark. Additionally, I would point out that a bond hearing through the executive has significant procedural failures that harm Mr. Ali. Requiring first that the burden of proof be placed on Mr. Ali to prove that he is not a danger. Instead, all civil detention case law has required that the burden of proof on dangerousness be placed on the government in prolonged detention cases. The bond hearing places that squarely on Mr. Ali, who is in a tough position to fight it as he's jailed, he lacks English skills, makes it harder for him to present evidence to support his position. Due process jurisprudence has always required the reviewing court to consider the constitutionality of the length of detention as well. Immigration judges are prohibited from making constitutional decisions. So the immigration judge would, if this case was kicked back to him on a bond hearing, would still be not permitted to consider the length of detention as a potential factor in Mr. Ali's case. I would point out that the- What limits the, uh, what limits that bond hearing to not considering, you said at all, the length of time? I'm sorry? Yes. What does that, what proves it? So the, if I understand your question, the immigration court, the judges in the immigration court are executive officers. They are not allowed to make constitutional arguments or considerations, but by the BIA has ordered that and we cited that case in our brief. Yeah, yeah, but I'm asking a the period of time they had been in, into account at all, I heard you say in that business. They can't consider the length of time as to be violative of a due process or- Well, I get that. Yes. But you acted like they couldn't even hardly acknowledge it or state it or think about it. Well, as a practical matter, that's a common problem. Yes. I mean, they- So are there limits, are there limits rules on the bond hearing? I guess that's a better question. No. Okay. Not that I know of. Has there been a bond hearing in this case? Yes, there was. Okay. When was the last bond hearing? September, 2017. Thank you. Okay. Was that the initial bond hearing? Yes, it was. Okay. There hasn't been another one. That's what I was- Correct, Your Honor. Yeah. Thank you. Go ahead. Okay. He sought another one? No, Your Honor, he hasn't. Does he have the ability to seek another one? Under the statute, he can. The concerns that I have brought up are, you know, the reason that it hasn't happened. I would note in another opinion of Judge Doty's that we cited too in our initial complaint, we cited that Judge Doty had also ordered the releases of another alien that Judge Wood had found a danger to society because of a drunk driving conviction. There is concern by his immigration legal team that Judge Wood would find him dangerousness without much consideration of his claims. So that's why there has not been a pursuit of the bond hearing. I would also point out additionally, Your Honor, that the appellants have cited two cases in their brief, Moose v. Sessions and Jamal A. v. Whitaker. And I want to talk about those cases very quickly. In Moose v. Sessions, the court found the due process clause imposes limitations on detention under 1226C for criminal aliens. The district court noted the parties could hardly argue otherwise. The Supreme Court has long recognized due process protects aliens present in the United States, including those subject to removal. And quoting the Supreme Court, it says, due process applies to all persons within the United States, including aliens, whether the presence here is lawful, unlawful, temporary, or permanent. And in that case, Mr. Moose was detained for 14 months and had his habeas court case granted. The other case, Jamal A. Whitaker, similar issue, but it was a different statute. It was a 1225B. It was an arriving alien statute. And the court there, again, noted that they have due process protections. But the court also noted that an arriving alien has less due process protections than a criminal alien under 1226C. Now, after 19 months of detention, they still ordered and granted his habeas petition. But the court has noted there is a hierarchy of due process protections. And Mr. Ali, as a non-criminal alien, non-arriving alien, would have stronger due process protections than the aliens that were granted habeas proceedings for less time in custody than they've had. Judge Doty's opinion, to support his opinion, Judge Doty reviewed all evidence properly before him and granted the habeas. Why shouldn't even, for Judge Doty, we have a remand so he looks at, is it Schreiber after David? Sure. Why shouldn't there be a remand so that at least Judge Doty gets to look at that? So I would say if the court wants to do that, the court can do that. I would say that that is the case. So we would not object to a remand on those grounds. That said, you know, there is an issue of fairness in court proceedings. The appellants chose their litigation strategy. They chose not to provide this evidence that they could have provided at any time. They chose not to. So that would be the general concern about that. But in fairness, there was no procedure in place requiring a reasonableness review. So isn't that a factor as well? Your point is well taken, Your Honor, but I would argue against that. I think, you know, at a minimum, when we filed our habeas and we set out the law in our complaint, in our briefing, appellant was noted, was put on notice of what the law required. We quoted several decisions from the District Courts of Minnesota, including Judge Doty, about, you know, the burden of proof to find dangerousness and risk of flight to be on the government in this case. So they were placed on notice. They chose not to. Now, again, we don't actually have any strong objections to that other than this general fairness of the hearings. We are very confident that if this evidentiary hearing was conducted in front of Judge Doty, we would be victorious. The evidence that he's a terrorist is minimal. Now, there's not been an evidentiary hearing to this point, right? It was tried on the papers, so to speak? Yes. Yes, Your Honor. That's correct. I notice my time is up, so unless there's further questions, thank you, Your Honors. Very well, thank you. Thank you, Your Honors. This Court may not review the merits of the immigration judge's bond decision. That's precluded under 1226E. There is no jurisdiction. What's important? Accept habeas review. Well, Your Honor, but he doesn't challenge a, there's no statutory challenge to the bond hearing. There is no challenge that he was deprived of any procedural protections at the bond hearing. What's important for this Court to understand, to note, is that the fact of the IJ's decision, the fact that the IJ decision in this case had found that he had failed to present evidence that he was not a danger to the community. And in regards to the Schreber declaration, which is submitted as part of our brief, the Schreber declaration, we did not submit to this Court as part of our merits brief. We submitted it in support of our emergency motion to stay pending appeal, because under a motion to stay, the Court is allowed to consider the dangerousness of the particular individual were he to be released from detention pending a decision by this Court. So we did not submit it on the merits. Now, are you trying to draw a big distinction there? Because I think in the end that's against you. I think in the end that's bad for you. Don't you want the Schreber facts to be before this Court? That's one reason we did a stay. Yes, Your Honor, but there is clearly a distinction between a motion to stay where we need to argue that this particular alien needs to be continued to be detained pending a decision by this Court versus the merits of this particular appeal. Because I go back to my earlier point, the immigration, the merits of the immigration judge's bond determination is not properly before this Court. That's a discretionary decision, which is beyond the reach. And I invite the Court to compare the Schreber declaration with Special Agent Gregg's declaration. You'll find that the information is largely, if not almost exclusively, the same. There was an ample amount of evidence presented to the immigration judge by the FBI and by ICE that this individual poses a danger to national security. Mr. Ali makes repeated references to a violation of due process if there is prolonged detention, but that's not the standard. The standard is indefinite. Detention is recognized by the 1226A and the procedural posture of this particular case. There is no threat of indefinite detention allowing either Judge Doty or any other court to read in an implication in 1226A or to order release when there's been no removal. How do we know it's not indefinite? Isn't it at the whim of the BIA then to issue a final order? Well, it is before the BIA, Your Honor, and I'd note also that ICE has filed a motion to expedite this particular review, but it certainly is not comparable factually to the threat of indefinite or permanent detention that the alien in Zadvydas faced. Here we have process proceeding. We have an immigration judge's decision, which is thorough and detailed in the extreme. We have an immediate appeal by the alien and we have consideration by the board. Um, it's, it's simply the reasonable, uh, progression of any alien's case and this is where we are. So in sum, Your Honors, we believe, uh, I see my time is up, uh, but I will say that we request that the, uh, order be vacated, reversed and remanded to the district court with instructions to deny Mr. Ali's habeas petition and enter judgment for the respondent. Thank you. Very well. Counsel, we appreciate your appearance here today and arguing in this interesting matter. Uh, it will